UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAVONYA LAMPKIN,

    Plaintiff,

v.

HUBBARD CONSTRUCTION COMPANY
and P. FREDERICK O'DEA, JR.,

    Defendants.

CASE NO. 6:07-CV-01635-22-GJK

**DISPOSITIVE MOTION**

## DEFENDANTS HUBBARD CONSTRUCTION COMPANY AND P. FREDERICK O'DEA, JR.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants Hubbard Construction Company and P. Frederick O'Dea, Jr., pursuant to Federal Rule of Civil Procedure 56(b), file their Motion for Summary Judgment and Incorporated Memorandum of Law, and state as follows:

On October 15, 2007, Plaintiff commenced this civil action against Defendants. Plaintiff's one-count Complaint alleges that she was not paid overtime compensation as required under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-219. (Doc. 1, ¶ 11.)

Defendants are entitled to summary judgment as a matter of law because Plaintiff is exempt from overtime compensation under 29 U.S.C. § 213(a)(1), the executive exemption of the FLSA. Alternatively, should the Court deny Defendants' motion on the exemption issue, Defendant O'Dea is entitled to summary judgment because the undisputed material facts prove that he was not Plaintiff's "employer" as that term is defined under the FLSA.

WHEREFORE, Defendants respectfully request that this Court enter summary judgment in their favor and dismiss Plaintiff's Complaint in its entirety with prejudice.

I.  **MATERIAL FACTS AS TO WHICH DEFENDANTS CONTEND THERE IS NO GENUINE ISSUE FOR TRIAL**[1]

   A.  **THE PARTIES.**

   1.  Co-defendant Hubbard Construction Company is a subsidiary of the Hubbard Group of Orlando, Florida. (*See* Affidavit of Chris Czerwonka ("Czerwonka"), Hubbard's Human Resource Manager/EEO Officer, attached as Exhibit 1). In business since 1920, Hubbard is one of Florida's largest heavy civil construction companies. (Czerwonka Aff. ¶ 3). The scope of Hubbard's work includes complex highway projects, site development, paving, utility and drainage systems, surveying, reclaimed asphalt product and hot mix sales, and state-of-the-art bridge building. *Id.*

   2.  Co-defendant P. Frederick O'Dea, Jr. is employed by Hubbard as Vice President/Chief Financial Officer. (Czerwonka Aff. ¶ 10). His job primary job duty is to evaluate, plan, organize and direct Hubbard's financial, accounting, outside audit and investment activities. *Id.* He is also responsible for preparing and presenting financial reports, financial statements, and Hubbard's annual budget and providing procedures and information systems to maintain adequate internal accounting, financial controls and proper records. *Id.* He also prepares budget projections and forecasts. *Id.* Mr. O'Dea directly supervises accounting, finance and information technology personnel only – no other Hubbard personnel. *Id.* Mr. O'Dea had no responsibility or involvement in overseeing, supervising or directing Plaintiff's job activities or any employees in the road construction

---

[1] Solely for purposes of Defendants' Motion for Summary Judgment, Defendants, as they must, resolve any disputed issues of fact in Plaintiff's favor. *See Hawkins v. Sarasota County Sch. Bd.*, 322 F.3d 1279, 1280-81 (11th Cir. 2003).

department. *Id.* Mr. O'Dea also does not hire, fire or pay any employees in the road construction department. *Id.* Mr. O'Dea had no involvement in the decision to classify Plaintiff's position or any other positions as exempt. *Id.*

3. Plaintiff Lavonya Lampkin was hired by Hubbard on March 21, 2000. (Czerwonka Aff. ¶ 5). At all times during her employment, Plaintiff was assigned to work on a road construction crew. *Id.* Plaintiff was first employed as a laborer and, after a series of promotions, Plaintiff's last position held with Hubbard was grade foreman.[2] *Id.*

4. At the time of her promotion to grade foreman, Plaintiff was aware that she would have greater responsibility and additional job duties compared to her previous position of crew chief. (Pl. dep. 49:10-14). Plaintiff was also aware that she would be paid salary rather than hourly. (Pl. dep. 50:8-16). Plaintiff's salary as a grade foreman was $52,000 annually or $2,166.67 semi-monthly. (Czerwonka Aff. ¶ 5). Plaintiff received her full salary if she worked any portion of a workweek (with the exception of her final workweek). *Id.* The function of recording whether Plaintiff was present at work or absent was performed by her supervisor, generally the site's Project Superintendent. *Id.* This information was then submitted to Hubbard's payroll department for the processing of Plaintiff's salary. *Id.*

5. Plaintiff did not disagree with receiving a salary rather than hourly pay – she only disagreed with the amount of her salary. (Pl. dep. 117:13-20).

6. Plaintiff's claim for unpaid overtime spans the timeframe during which she was employed by Hubbard as a grade foreman - January 2007 until April 2007. (Doc. 9). Plaintiff claims that she worked approximately 20 hours of overtime each week during the

---

[2] Although Plaintiff refers to her position as a "roadway" foreman, the accurate title is "grade" foreman.

period of her claim, for a total of $2,240 in actual damages. (Doc. 9).[3]

    B.    PLAINTIFF'S JOB DUTIES WHILE EMPLOYED AS A GRADE FOREMAN.

    **1.    Plaintiff's primary duty was management.**

7. Plaintiff's most important job duty as a grade foreman was supervising a crew of personnel assigned to construct, maintain and repair streets, curbs, sidewalks and storm drains. (Czerwonka Aff. ¶ 7).

8. Plaintiff "was solely responsible building a roadway from start to finish." (Pl. dep. 72:18-20). As detailed in the grade foreman job description, Plaintiff's duties included:

- Planning, assigning and directing the work duties of personnel in a planned program of grading;
- Coaching and teaching crew chiefs and crew members;
- Managing differences at the work site;
- Forming and implementing workforce crew plans and schedules;
- Organizing and delegating work;
- Supervising the grading and reshaping of streets, alleys and ditching; and,
- Submitting time reports for personnel under her supervision.

9. Plaintiff agrees that the duties outlined in the grade foreman job description accurately detail, at a minimum, the job duties she performed as a grade foreman. (*See* Exhibit 2 to Pl. dep.; Pl. dep. 121:2-7). Plaintiff's additional job duties included:

- Disciplining employees assigned to her crew. (Pl. dep. 68:5-7).
- Evaluating employees assigned to her crew.[4] (Pl. dep. 69:3-6).
- Granting leave requests for employees assigned to her crew. (Pl. dep. 71:6-9).
- Ensuring that employees on her crew had the tools necessary to perform their job duties. (Pl. dep. 81:4-7).
- Communicating changes in general work instructions to employees on her crew. (Pl. dep. 81:16-22).

---

[3] Defendants acknowledge that the fees associated with the filing of the motion alone are greater than the amount of alleged unpaid overtime sought by Plaintiff, but file this motion because of the significance of a favorable judgment.

[4] Plaintiff did not perform any evaluations while she was employed as a grade foreman because none of the employees she supervised were due for their annual evaluation. (Pl. dep. 70:2).

- Giving work directions to temporary employees. (Pl. dep. 82:19-21).
- Solving problems. (Pl. dep. 86-87).
- Communicating directly with subcontractors at least once or twice per day. (Pl. dep. 55:4-25).

10. Plaintiff also had the authority to hire and terminate employees, although she did not have the need to while employed as a grade foreman. (Czerwonka Aff. ¶ 8; Pl. dep. 121:14-17).

11. Plaintiff also attended morning management meetings and received general work instructions from her supervisor to complete a general task. (Pl. dep. 63:8-18; 66:5-25; 67:1-6). Plaintiff then directed the employees working on her crew to perform the specific tasks (such as grading, pipe-laying and traffic control) she deemed necessary to complete the general task. (Czerwonka Aff. ¶ 7; Pl. dep. 48:16-22). Plaintiff then surveyed the entire work site 4-5 times each day generally in her company-issued truck to monitor her crew's work performance. (Pl. dep. 57:16-17; 84:11-25; 85:1-7).

12. Plaintiff supervised as few as four employees to as many as 20 employees. (Pl. dep. 56:10-13; 74:14-17). Employees assigned to Plaintiff's crew were non-exempt and generally earned $9.30 to $15.45 per hour. (Czerwonka Aff. ¶ 8). Plaintiff met with each employee assigned to her crew every morning to determine whether or not the employee was capable of safely performing his/her job duties (i.e., not intoxicated or injured). (Pl. dep. 77:11-25; 78:1-2).

13. Plaintiff had nominal communication with her supervisor during the day about the progress of her crew's work and was not required to report to her supervisor at the end of the day regarding her crew's work progress. (Pl. dep. 87:7-10; 87:11-13).

14. Plaintiff recorded any problems on the job site in Kheops, a software program on a company-issued computer that Plaintiff typically carried with her in her truck. (Pl. dep.

5

70:11-24; 87:14-23).

15. Plaintiff acknowledges that she competently performed her job duties. (Pl. dep. 76:21-23).

**2. Plaintiff occasionally and sporadically performed non-exempt labor-related work.**

16. As set forth in the grade foreman job description, Plaintiff was required to have experience working on heavy equipment and knowledge of excavation, grade work, surveying and final excavation work. (*See* Exhibit 2 to Pl. dep.; Czerwonka Aff. ¶ 9). Plaintiff was also required to have the ability to participate in strenuous physical exertion. *Id.* The purpose of these requirements was to ensure that Plaintiff possessed the knowledge and skills necessary to direct her crew in the performance and completion of their work instructions, to determine the accuracy of her crew's work performance and to ensure her safety and that of her crew. *Id.* Any non-management or labor-related work performed by Plaintiff was at her discretion and secondary to her management-related duties. *Id.*

17. For example, Plaintiff operated a roller approximately 3-4 times while employed as a grade foreman for approximately 30-45 minutes each time. (Pl. dep. 80:5-20). Plaintiff also dealt "a small bit" with getting the trucks in and out to the backhoe, to get loaded and to get back on the road, (Pl. dep. 83:12-21). Plaintiff also did "a little flagging of traffic and stuff like that" but only "maybe once or twice a week... whenever it was necessary." *Id.* Plaintiff also spent some of her work time on the last project she was assigned to shoveling. (Pl. dep. 95:1-7). Plaintiff also checked levels, depths and grades using a level and an engineer's ruler while and after her crew performed leveling. (Pl. dep. 78:1-25; 79:1-19).

### 3. Defendant P. Frederick O'Dea, Jr.

18. Plaintiff has no knowledge of Mr. O'Dea or any of the job duties he performs for Hubbard. (Pl. dep. 129:4-28). Plaintiff has no knowledge who was responsible for developing the job descriptions for the grade foreman position or who was responsible for issuing her her paycheck. (Pl. dep. 129:9-17).

## II. LEGAL ARGUMENT

### A. STANDARD OF REVIEW.

Summary judgment "shall be rendered" where the "pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), *cert. denied*, 484 U.S. 1066 (1988). A plaintiff cannot rely on inadmissible evidence, mere speculation, or her own conclusory testimony to defeat a motion for summary judgment. *Edwards v. Niles Sales & Serv.*, 439 F. Supp. 2d 1202, 1218-19 (S.D. Fla. 2006).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 1207.

### B. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THE UNDISPUTED FACTS DEMONSTRATE PLAINTIFF WAS EXEMPT FROM OVERTIME COMPENSATION UNDER THE FLSA.

The FLSA requires every employer to pay at least the statutory minimum wage, and pay time and a half for every hour worked in excess of forty hours per week. 29 U.S.C. §§ 206(a), 207.

Plaintiff cannot establish a claim for overtime compensation under the FLSA because

the undisputed material facts show that, while employed by Hubbard as a grade foreman, she did not perform work to which she was entitled to overtime. Rather, the duties Plaintiff performed as a grade foreman fall under the executive exemption.

To establish that Plaintiff was a bona fide executive while employed as a grade foreman, Hubbard must show that: (1) Plaintiff received a weekly salary of at least $455; (2) Plaintiff's primary duty was management of Hubbard's enterprise or of a customarily recognized department or subdivision thereof; (3) Plaintiff customarily and regularly directed the work of two or more other employees; and (4) Plaintiff had the authority to hire or fire other employees or that her suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees was given particular weight. 29 C.F.R. § 541.100(a) (2006). The undisputed material facts establish that all of these factors are satisfied.

1. **Plaintiff received more than $455 per week.**

Plaintiff received $2,166.67 semi-monthly if she worked any portion of a workweek. It is undisputed that she earned more than $455 per week under the "salary basis" test.

2. **Plaintiff's primary duty was management of a road construction crew.**

The regulations define "primary duty" as the "principal, main, major or most important duty that the employee performs," which is based on an examination of the totality of the circumstances in a particular case. 29 C.F.R. § 541.700(a).

The term "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the

purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102.

The phrase "a customarily recognized department or subdivision" is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. A customarily recognized department or subdivision must have a permanent status and a continuing function. 29 C.F.R. § 541.103(a). A recognized department or subdivision need not be physically within the employer's establishment and may move from place to place. 29 C.F.R. § 541.103(c). The mere fact that the employee works in more than one location does not invalidate the exemption if other factors show that the employee is actually in charge of a recognized unit with a continuing function in the organization. *Id.* In addition, continuity of the same subordinate personnel is not essential to the existence of a recognized unit with a continuing function. 29 C.F.R. § 541.103(d).

Plaintiff's most important job duty as a grade foreman was supervising a crew of personnel assigned to construct, maintain and repair streets, curbs, sidewalks and storm drains. To carry out her management duties, Plaintiff attended a daily management meeting to receive general work instructions, determined and communicated specific work

instructions to her crew, met with every crew member each morning to every morning to determine whether or not the employee was capable of safely performing his/her job duties, regularly reviewed her crew's work performance, solved problems, recorded problems on the company computer, handled employee complaints, worked directly with subcontractors and ensured that employees on her crew had the tools necessary to perform their job duties. Plaintiff also had the authority to hire, fire, train, discipline and evaluate personnel.

The fact that Plaintiff worked on multiple projects in a variety of locations or supervised a fluctuating group of employees does not invalidate the exemption. Plaintiff was assigned to manage a specific work unit with a continuing function – road construction. *Sutton v. Engineered Systems, Inc.*, 598 F.2d 1134, 1135 (8th Cir. 1979) (job site superintendent "clearly in charge of supervising a recognized department or subdivision"); *Fight v. Armour & Co.*, 533 F. Supp. 998, 1004 (W.D. Ark. 1982) (foreman of shipping and receiving department exempt executive); Opinion Letter of Wage and Hour Division, U.S. Dept. of Labor, 2007 DOLWH LEXIS 3 (January 25, 2007) (construction project superintendent was exempt executive).

Furthermore, the fact that Plaintiff cannot articulate the specific amount of time she spent performing management-related work also does not invalidate the exemption. The amount of time spent on managerial duties is only one factor to consider in identifying an employee's primary duty for purposes of determining whether the employee is subject to the FLSA's executive exemption from overtime pay requirements. *Ferrell v. Gwinnett County Bd. of Educ.*, 481 F. Supp.2d 1338, 1344 (N.D. Ga. 2007). Generally, primary duty means that the employee is performing managerial duties during a major part, or over 50 percent, of the employee's time. *Jackson v. Advance Auto Parts, Inc.*, 362 F. Supp.2d 1323, 1333 (N.D.

Ga. 2005). "Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700(b).

Other factors to be considered, include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. 29 C.F.R. § 541.700(a).

Plaintiff's primary job duty was the management of a road construction crew assigned to perform various tasks on a road construction project. Occasionally, Plaintiff performed labor-related duties such as shoveling, operating a roller, checking levels, depths and grades and flagging traffic, but the undisputed facts demonstrate that these were not the most significant duties performed by Plaintiff. Furthermore, Plaintiff performed her duties with little communication with her supervisor during the day and was not required to report to her supervisor at the end of the day regarding work progress. Plaintiff's salary compared with the wages paid to employee son her crew also indicates that she was performing exempt management-related work and compensated accordingly.

The fact that Plaintiff determined at her discretion when to perform non-management or labor-related work also supports her exempt status. "Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while

11

performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods." 29 C.F.R. § 541.106(a). Plaintiff admittedly was responsible for building a roadway from start to finish. She determined when to perform non-exempt work in furtherance of her primary duty of managing the construction of the road.

Plaintiff's belief that the work she performed as a grade foreman was non-exempt is insufficient to invalidate the exemption. While it is true that "'[w]hether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities,' an employee's characterization of his or her responsibilities should not be dispositive when that characterization conflicts." *Salazar v. Sunbelt Sprinkler & Well Drilling, Inc.*, 2008 U.S. Dist. LEXIS 52034, *13 (S.D. Fla. July 7, 2008), citing *Cooke v. General Dynamics Corp.*, 993 F. Supp. 56, 61 (D. Conn. 1997). Plaintiff accepted the grade foreman position with the complete understanding of its job duties and pay structure. The fact that she did not disagree with her exempt classification or receipt of salary vs. hourly wages during her employment is also indicative of her agreement with her exempt status. *Kelly v. Adroit, Inc.*, 480 F. Supp. 392, 394 (E.D. Tenn. 1979) (fact that plaintiff failed to question defendant's policy of not paying him overtime until after his termination "leads to a reasonable inference that plaintiff himself did not think he was entitled to overtime pay while he was working for defendant"); *see also Wilbur v. Silgan Containers Corp.*, 2008 U.S. Dist. LEXIS 72804, *22 (E.D. Cal. Aug. 18, 2008).

3.  **Plaintiff customarily and regularly directed the work of two or more other employees.**

The undisputed facts establish that Plaintiff supervised as few as four employees to as many as 20 employees and gave them daily work instructions.

4. **Plaintiff had the authority to hire or fire other employees.**

The undisputed facts establish that, as a grade foreman, Plaintiff had the authority to hire and fire other employees.

C. <u>DEFENDANT O'DEA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE UNDISPUTED FACTS DEMONSTRATE THAT HE WAS NOT PLAINTIFF'S EMPLOYER UNDER THE FLSA.</u>

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This definition of employer includes both the corporate employer and individuals who act as employers in relation to employees. Therefore, "the overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA..." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986) (citing *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). However, where a corporate officer has no activity that is "directly or indirectly in the interest of [the corporate employer] in relation to [the] employee," personal liability does not lie. *See* 29 U.S.C. § 203(d); *Patel* 803 F.2d at 638. "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel*, 803 F.2d at 638.

Mr. O'Dea had no involvement whatsoever in the day-to-day supervision of Plaintiff. He had no responsibility or involvement in overseeing or directing Plaintiff's job activities or any employees in the road construction department. He also had no involvement in the payment of wages to Plaintiff or the decision to classify Plaintiff's position as exempt. Plaintiff admits that she has no knowledge of Mr. O'Dea or any of the job duties he performs for Hubbard or knowledge as to who was responsible for issuing her her paycheck.

Similarly, in *Escobar v. Orlando Brewing Partners, Inc.*, 2005 U.S. Dist. LEXIS 30709 (M.D. Fla. Dec. 5, 2005), the court held that the defendant corporation's vice president was not the plaintiff's employer for FLSA liability purposes. The vice president never had authority to hire, fire, pay, or otherwise direct employees' activities, did not set employee schedules and "did not take such an active role as to be held personally responsible for any alleged violations of the FLSA." *Escobar*, at *7-8.

Because Mr. O'Dea had no direct responsibility for the supervision of Plaintiff, he cannot be held personal liable for any alleged FLSA violations and summary judgment should be granted for that reason in his favor.

WHEREFORE, Defendants respectfully requests that this Court grant summary judgment in their favor and dismiss Plaintiff's Complaint in its entirely with prejudice, and award them their reasonable attorney's fees and costs incurred in defending this action.

Dated this 23rd day of February, 2009.

Respectfully submitted,

By: s/Chelsie J. Roberts
    Thomas C. Garwood, Jr.
    Florida Bar No. 137120
    E-mail: tgarwood@fordharrison.com
    Chelsie J. Roberts
    Florida Bar No. 598208
    E-mail: croberts@fordharrison.com

    FORD & HARRISON LLP
    300 South Orange Avenue, Suite 1300
    Orlando, FL 32801
    (407) 418-2300 Telephone
    (407) 418-2327 Facsimile

    Attorneys for Defendants
    Hubbard Construction Company and
    P. Frederick O'Dea, Jr.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 23, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: K.E. Pantas, Esquire at clerk@pantaslaw.com.

s/Chelsie J. Roberts
Chelsie J. Roberts

Orlando:147299.1