**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LAVONYA LAMPKIN,**

                  **Plaintiff,**

**-vs-**                                      **Case No. 6:07-cv-1635-Orl-22GJK**

**HUBBARD CONSTRUCTION COMPANY**
**and P. FREDERICK O'DEA JR.,**

                  **Defendants.**
_____

**ORDER**

**I. INTRODUCTION**

      This cause comes before the Court for consideration of Magistrate Judge Gregory J. Kelly's Report and Recommendation ("R&R") (Doc. No. 33), entered on May 12, 2009, the Objections thereto filed by Defendants Hubbard Construction Company ("Hubbard") and P. Frederick O'Dea, Jr. ("O'Dea") (collectively, "Defendants") (Doc. No. 36), filed on May 27, 2009, and the response to Defendants' objections (Doc. No. 38) filed by Plaintiff Lavonya Lampkin ("Lampkin") on May 29, 2009.

      In his R&R, Judge Kelly recommended that the Court grant in part and deny in part Defendants' motion for summary judgment on all counts of Lampkin's Complaint. (Doc. No. 33 p. 7.) Judge Kelly recommended that the Court enter summary judgment in favor of O'Dea because Lampkin conceded that summary judgment is appropriate on her claims against him. (*Id.* at 3.) Regarding Hubbard, Judge Kelly recommended that the Court deny the motion

because he found that a genuine issue of material fact precluded summary judgment.[1] (*Id.* at 6-7.) In its objection, Hubbard argues that Judge Kelly erred when he considered its motion under the administrative exemption to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, rather than the executive exemption. (Doc. No. 36.) Hubbard also argues that Judge Kelly erred when he found that Lampkin's evidence created a genuine issue of fact regarding whether her primary duties involved exempt or nonexempt work. (*Id.*) In her response, Lampkin agrees that Hubbard's motion should be analyzed under the executive exemption, but argues that her evidence is nonetheless sufficient to preclude summary judgment. (Doc. No. 38.)

## II. BACKGROUND

The Court adopts Judge Kelly's statement of the relevant facts:

> On October 15, 2007, [Lampkin] filed a complaint ("Complaint") against [Defendants] alleging violations of the [FLSA]. [Lampkin] asserts a claim for unpaid overtime compensation. Defendants operate a construction company in Winter Park, Florida. [Lampkin] states she was employed by Defendants as a roadway assistant from March 2000 through May 2007. According to Defendants' Verified Summary of [Lampkin]'s hours and earnings, [Lampkin] held several positions throughout her employment but was transferred to a salaried foreman position January 1, 2007, which she held through her termination on May 9, 2007. [Lampkin] maintains that from January 2007 through April 2007 she worked approximately two hundred and eighty (280) hours of overtime. She claims damages, including liquidated damages, in the amount of $4,480.00.

(Doc. No. 33 pp. 1-2 (internal citations omitted).)

---

[1] Because Defendants do not object to that portion of Judge Kelly's R&R granting summary judgment in favor of O'Dea, the Court will refer to Defendants' motion for summary judgment and their objections to Judge Kelly's R&R as "Hubbard's" motion for summary judgment and "its" objections to the R&R.

-2-

On February 23, 2009, Defendants filed their motion for summary judgment (Doc. No. 30). In that motion, Hubbard argues that Lampkin is not entitled to overtime pay because the executive exemption of the FLSA, 29 U.S.C. § 213(a)(1), applies to her claims. Moreover, Hubbard argues that Lampkin has not produced sufficient evidence that her primary duties were nonexempt to preclude judgment as a matter of law in its favor.[2] In response, Lampkin argues that the undisputed evidence indicates that she spent 90% of her time performing nonexempt manual labor.[3] Thus, she asserts that a genuine issue of material fact precludes summary judgment.

### III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.' " *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U. S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds,* 30 F.3d 1347 (11th Cir. 1994)). "There is no genuine issue for trial unless

---

[2] Hubbard supports its argument by citing its job description for the position "Grade Foreman," Lampkin's deposition transcript, and an affidavit of Hubbard's human resource manager/EEO officer, Chris Czerwonka.

[3] Lampkin supports her argument by attaching an affidavit to her response and by citing the deposition testimony of Lawrence Speed ("Speed"), who was formerly employed by Hubbard as a project superintendent.

the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Id.* at 1349. The court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

## IV. ANALYSIS

### A. Legal Standard

Under the FLSA, an employer must compensate an employee at an overtime rate for all work performed in excess of forty hours during a workweek. 29 U.S.C. § 207(a)(1). To qualify for overtime pay, the employee must establish either enterprise or individual coverage. *Id.*; *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006). Individual coverage applies if the employee is (1) engaged in commerce or (2) engaged in the production of goods for commerce. § 207(a)(1). Enterprise coverage applies if the employee is employed in an enterprise engaged in commerce or in the production of goods for commerce. *Id.* An employer can avoid paying overtime compensation to a covered employee, however, if it establishes that one of the FLSA's exemptions applies. § 213(a)(1); *Wouters v. Martin County, Fla.*, 9 F.3d 924, 929 (11th Cir. 1993). An employee is exempt from the FLSA's overtime provisions if she is "employed in a bona fide executive, administrative, or professional capacity." § 213(a)(1). These exemptions are construed narrowly against the employer. *Wouters*, 9 F.3d at 929. Finally, whether an employee is exempt from the requirements of the FLSA is a question of fact. *Hodgson v. Colonnades, Inc.*, 472 F.2d 42, 47 (5th Cir. 1973).

### B. The Executive Exemption

As a preliminary matter, Hubbard asserts that its motion is properly analyzed under the executive exemption of the FLSA, not the administrative exemption. (Doc. No. 36 p. 6.) Lampkin does not dispute this assertion. The Court agrees with the parties and will analyze Hubbard's motion under the executive exemption.

An employee's job title alone is not sufficient to establish her exempt status. 29 C.F.R. § 541.2. Instead, her status is determined "on the basis of whether [her] salary and duties meet the requirements of the [relevant] regulations." *Id.* Under 29 C.F.R. § 541.100(a), an executive employee is any employee (1) who earns at least $455 per week, (2) whose primary duty is managing the enterprise or "a customarily recognized department of subdivision thereof," (3) who "directs the work of two or more other employees," and (4) who hires and fires other employees or whose recommendations regarding the status of other employees is given particular weight. "Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met." 29 C.F.R. § 541.106(a). To satisfy the requirements of § 541.100 in concurrent performance cases, an employee's "primary duty" must consist of exempt work. *Id.* The primary duty inquiry is a case-by-case decision "based on the factors set forth in § 541.700." *Id.*

Under § 541.700(a), "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship

> between the employee's salary and the wages paid to other employees for the
> kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). The regulations indicate that the amount of time spent performing exempt work is a useful guide, noting that "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." *Id.* at § 541.700(b). However, the regulations also note that time spent performing exempt work is not the sole factor, stating that "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.*

**C. Genuine Issue of Material Fact Precludes Summary Judgment**

The central issue raised by Hubbard's motion for summary judgment and its objections to Judge Kelly's R&R is whether sufficient evidence exists for a reasonable jury to conclude that Lampkin's "primary duty" was the performance of nonexempt work. In his R&R, Judge Kelly found that Lampkin "has produced evidence which could support a finding that her primary duties were nonexempt work." (Doc. No. 33 p. 7.) Judge Kelly cited Lampkin's affidavit, which stated that 90% of her job duties required non-managerial manual labor, and the deposition of Speed, who testified that Lampkin performed the same duties as grade foreman as she did when she was a crew chief. (*Id.*) Hubbard objects to Judge Kelly's reliance on Lampkin's affidavit and Speed's deposition testimony. Hubbard asserts that Judge Kelly should not have relied on Lampkin's statement that 90% of her job duties required manual labor because that assertion "directly contradicts [Lampkin's] deposition testimony." (Doc. No. 36 p. 4.) Hubbard argues that "[i]t is impossible, given the managerial duties [Lampkin]

-6-

acknowledged she performed as a foreman, that she spent 90% of her time performing manual duties." (*Id.*) It further asserts that the Court should strike Lampkin's affidavit as a sham. Finally, Hubbard argues that Judge Kelly should not have relied on Speed's testimony because it is inconsistent and he only worked with Lampkin for one week and did not observe Lampkin perform her duties as a foreman.

Hubbard's objections are without merit. The Court will not strike Lampkin's affidavit as a sham. Lampkin's deposition testimony indicates that when she worked on the "192 project," her exempt duties included attending morning management meetings, giving instructions to her crew (when necessary), speaking with each crew member in the morning, surveying the work site four to five times each day, and reporting her crew's hours to her supervisor. (Doc. No. 30-2 pp. 63:8-18, 66:5-25, 70:3-10, 77:11-78:2, 84:11-85:7.) Lampkin estimated that she spent less than thirty minutes each day in the morning management meetings and spent a total of fifteen to thirty minutes surveying the one-mile work site each day. (*Id.* at 78:17-21, 85:6-14.) Her testimony further indicates that the other exempt tasks did not consume much of her time. (*See, e.g.*, *id.* at 77:11-23 (stating, "I would make a habit of speaking with each person [on her crew], regardless of what the–you know, a conversation, even if it was just to say good morning.").) Thus, Lampkin's deposition testimony indicates she spent forty-five minutes to an hour each day in her morning meetings and surveying the site, and spent some additional time performing her other exempt duties. Regarding the "17-92 project," Lampkin stated that she spent about thirty minutes each day in a morning safety meeting. (*Id.* at 103:10-12.)

In contrast, Lampkin's deposition testimony indicates that her nonexempt duties occupied most of her time each day. Regarding the 192 project, she testified that she spent the majority of her day manually checking grades and the depth of ditches using a string line and level, which required her to use a shovel to dig out spots for further excavation or to smooth out spots with minor variations in depth. (*Id.* at 78:22-79:13, 83:2-8, 94:17-95:11 (stating that checking the depth of ditches and leveling grades "was a full day's job").) On occasion, she also performed other nonexempt duties such as operating the roller, "getting trucks in and out to the backhoe," and flagging traffic. (*Id.* at 80:7-20, 83:12-16.) Regarding the 17-92 project, Lampkin stated that she spent most of her day helping the crew chief lay pipe. (*Id.* at 103:19-104:4 ("[The crew chief] was laying pipe and he would have to pull the box or maybe I would hold the cloth for him so that he could pull the box. I would wrap the pipe, toss, you know, the dirty ends to help cover the pipes, the miscellaneous work.").) She also testified that she spent fifteen to twenty minutes each day pulling barrels out to set up lane closures. (*Id.* at 102:25-103:9.) Thus, her deposition testimony indicates that she spent the majority of her day performing nonexempt duties.

Lampkin's affidavit is consistent with her deposition testimony. Lampkin asserts that she worked six days a week and approximately sixty-two hours per week, which equals about 10.3 hours per day. (*Id.* at 123:22-124:14.) If Lampkin spent 90% of each day performing nonexempt work, then she would have spent approximately an hour performing exempt work. This figure is consistent with Lampkin's deposition testimony, where she estimated spending slightly more than forty-five minutes to an hour each day performing exempt work. Thus,

Lampkin's affidavit testimony does not contradict her deposition testimony, and Judge Kelly did not err when he relied on her affidavit.

Moreover, even if Lampkin spent less than 90% of her time performing nonexempt duties, her deposition testimony is nonetheless sufficient to create a genuine issue of material fact regarding the applicability of the executive exemption. Her testimony indicates that despite her job title and description, she often had to perform manual labor because the projects she worked on were understaffed. (*See, e.g.*, *id.* at 78:22-79:13.) She also testified that her crew members regularly received direct instructions from and had their leave approved by her supervisors, suggesting that her authority was nominal. (*See id.* at 71:10-25.) Although Lampkin entered time for fifteen to twenty employees, she stated that for most of those employees, a supervisor gave her their hours and she merely input them into the system. (*Id.* at 72:24-73:6.) Thus, the Court agrees with Judge Kelly that a genuine issue of material fact precludes summary judgment. Lampkin's evidence is sufficient for a reasonable jury to conclude that her primary duty was the performance of nonexempt work.[4]

## V. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

---

[4] The Court does not reach Hubbard's objections to Judge Kelly's reliance on the testimony of Speed because Lampkin's testimony is sufficient, by itself, to preclude summary judgment. In addition, because an issue of fact precludes summary judgment on the primary duty requirement of § 541.100(a), the Court need not decide whether the other three § 541.100(a) requirements are satisfied.

-9-

1. Magistrate Judge Gregory J. Kelly's Report and Recommendation (Doc. No. 33), filed on May 12, 2009, is APPROVED and ADOPTED, except to the extent that it relies on the administrative exemption of the FLSA rather than the executive exemption.

2. Defendants Hubbard Construction Company and P. Frederick O'Dea, Jr.'s Objections to Report and Recommendation (Doc. No. 36), filed on May 27, 2009, are OVERRULED.

3. Defendants Hubbard Construction Company and P. Frederick O'Dea, Jr.'s Motion for Summary Judgment (Doc. No. 30), filed on February 23, 2009, is GRANTED IN PART and DENIED IN PART. The motion is GRANTED to the extent that summary judgment is entered in favor of Defendant P. Frederick O'Dea, Jr. on all counts of the Complaint. The motion is DENIED in all other respects.

4. The clerk shall dismiss Defendant P. Frederick O'Dea, Jr. as a party to this case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on July 10, 2009.

Copies furnished to:

Counsel of Record
Unrepresented Party

ANNE C. CONWAY
United States District Judge